IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Lloyd Stephen Wellman                              Case No.: 2:08-CV-557

            Plaintiff                              Judge Graham

        v.                                         Magistrate Judge Abel

The Sutphen Corporation

            Defendant.


OPINION AND ORDER


This matter is before the Court on a motion for summary judgment, pursuant to Fed. R.

Civ. 56(c) filed by defendant The Sutphen Corporation ("Sutphen" or "the Company").  Plaintiff

Lloyd Stephan Wellman asserts Sutphen violated his rights under The Family and Medical Leave

Act of 1993 (FMLA).

        As set forth below, the Court denies Sutphen's motion for summary judgment.

I.      **FACTUAL BACKGROUND**

        Wellman worked for Sutphen, a manufacturer of fire fighting equipment, from March

2000 until July 2006.  Compl. 5; Answer 5.  At all relevant times, Wellman was subject to the

terms and conditions of an agreement ("the Agreement") between his union, International

Brotherhood of Teamsters, Local 284 (the "Union"), and Sutphen.  Deposition of Lloyd Stephen

Wellman, Def. Ex. F at 7-8[1].  Article 7, Section E of the Agreement addresses "Medical Leave."

Def. Ex. A.  It states:

>An employee who is unable to work due to a bonafide non-occupational illness or injury may apply for medical leave.  <u>The application for leave</u> will specify the medical condition for which leave is requested and <u>will be accompanied by a statement from the employee's physician with respect to the employee's inability to work and the expected date of return to work</u>.  The initial leave will be granted for the period of time specified by the physician, in writing, and may be extended in the event additional time is required, in the same manner as the request for the initial leave.  In any event, inability to work because of proven sickness or injury shall not result in loss of seniority rights.

(<u>Id</u>.)(emphasis added.)

According to Sutphen, the Company "clarified" its FMLA policy in February 2006.[2] Transcript of Arbitration Proceedings, Def. Ex. D at 147, 149; Sutphen Memorandum Addressing Clarified FMLA Policy, Def. Ex. I.  Pursuant to the terms of the clarified policy, employees seeking FMLA leave are directed to complete a "Request for FMLA form" and to have their physicians complete a "Certification of Health Care Provider" form.  Def. Ex. I. "Both forms must be submitted ... for the Company's determination of eligibility for FMLA." <u>Id</u>. The Request for FMLA form must be returned "at least fifteen (15) days in advance [of the

---

[1]For purposes of its Summary Judgment Motion, Sutphen accepts Plaintiff Wellman's deposition testimony as true.  <u>See</u> Sutphen's Motion for Summary Judgment, Doc. 20 at 3, fn. 1.

[2]There is some dispute regarding the notice Sutphen provided to employees, including Wellman, of this clarification.  Plant manager Keith Townsend testified that employees were advised of the clarification via memorandum dated February 17, 2006 (<u>see</u> Def. Ex. I), which according to Mr. Townsend, was posted in the shop on the main bulletin board.  Def. Ex. D at 147.  Wellman testified that the memorandum was never posted, but that he was provided with a copy of the memorandum sometime in April 2006.  Def. Ex. F at 18.

leave] (if possible)," but the clarified policy does not state a deadline for returning the Certification of Healthcare Provider form.  Id.

Wellman was diagnosed with arthritis in 2005.  Def. Ex. F at 10.  His arthritis caused him to be intermittently absent from work between March and June 2006.  Def. Ex. F at 12.  In early March 2006, Wellman approached his supervisor, Ken Chase, to discuss FMLA leave.  Def. Ex. D at 25, 186.  On or about March 9, 2006, Chase gave Wellman four documents. Those documents included a blank "Employer Response to Employee Request for FMLA Leave (Form WH-381)," a blank "Request for Family or Medical Leave of Absence" form, a blank "Certification of Healthcare Provider" ("CHP") form, and a document entitled "FMLA Fact Sheet: Serious Health Conditions." Def. Ex. F at 24; Sutphen FMLA Packet, Pl. Ex. 2.  Chase asked Wellman to complete and return the forms, but did not provide Wellman with instructions for completing the forms or a deadline for returning the forms.  Def. Ex. D at 26, 186-187. Similarly, there was no instruction sheet provided to Wellman, and none of the forms stated a return deadline.[3]

Wellman took the CHP form to his physician, Dr. Jeffrey Miller.[4]  Def. Ex. F at 25;

---

[3]The "Employer Response" form did provide a space for the Company to specify the deadline for returning the CHP:

> If required, you must furnish certification by _____ (*insert date*) (must be at least 15 days after you are notified of this requirement) or we may delay the commencement of your leave until the certification is submitted.

Pl. Ex. 2, page 1.

[4]Wellman testified that he understood that he needed to have his physician complete the CHP form, but that he had questions regarding how to complete the other forms.  For example, Wellman questioned whether he would be able to complete the Employer Response form.  Def.

Affidavit of Jeffrey Miller, M.D., Pl. Ex. 4 at para. 1. Dr. Miller completed the form on March 16, 2006, and Wellman picked it up, during his next appointment with the doctor, on March 20, 2006. Def. Ex. D at 189-190; Def. Ex. F at 25; Affidavit of Jeffrey Miller, M.D., Pl. Ex. 4 at para. 4; and Certificate of Health Care Provider signed by Dr. Miller and dated "03/16/2006," Def. Ex. J.

What happened next is disputed. Wellman alleges that he returned the completed CHP to Ken Chase on or about March 22, 2006,[5] his first day back to work after his March 20 appointment with Dr. Miller. Def. Ex. D at 190. Chase denies receiving the CHP on March 22 or any other day. Def. Ex. D at 26, 48. Similarly, Sutphen's Payroll and Benefits Administrator, Cindy LeMaster, testified that Wellman's CHP was not in the Company's "FMLA file," and that it would have been placed in that file if it had been returned to the Company. Def. Ex. D at 97. Eric Hemmert, Chase's supervisor, and Keith Townsend also testified that to their knowledge, Wellman never returned the CHP or any of the other FMLA documents. Def. Ex. D at 119, 142.

More than two months later, Wellman received a letter from Townsend. Def. Ex. F at 35. The letter states, in pertinent part:

> Consider the following as written notice to advise you that Supthen Corporation has not received the completed FMLA forms provided to you on 9 March 2006 as a result of your request for FMLA due to personnel [sic] illness.

---

Ex. D at 126, 213; Def. Ex. F. at 22. He spoke with Chase regarding his questions, and was told that Chase would "get back" to him with instructions. Def. Ex. D at 187. Wellman testified, however, that he never heard back from Chase. Id.

[5]Wellman testified that he gave Chase the CHP, and advised him that he would return the other forms once he received guidance from Chase as to how to complete them. Def. Ex. D at 190.

> Also, required is medical verification of your past absences pertaining to your request for FMLA since that date. The above information is required to verify your eligibility for FMLA. The length of time it's taken thus far to respond is unacceptable.
>
> This documentation must be completed and returned to me by 14 June 2006. Failure to comply will result in "Suspension Subject to Discharge" of your employment with Supthen.
>
> If you have any questions, please contact the undersigned.

Townsend's June 9, 2006 Letter to Wellman, Def. Ex. K.[6] On or about the same day, Wellman also received a written warning form filled out by Townsend. Def. Ex. C; Def. Ex. F at 47. The warning accuses Wellman of violating Company "Working Rule #4"[7] through his "[i]nsubordination, failure to properly complete any required reports or records or refusal to comply with orders of those in authority." Employee Warning Record, Def. Ex. C; see also Def. Ex. D at 160 (Townsend clarifying that the misconduct alluded to in the warning was Wellman's alleged failure to complete and return the FMLA forms).

Wellman testified that he did not understand exactly what documentation Towsend was asking him to provide, and that he therefore attempted to find Townsend but was unable to locate him. Def. Ex. D at 195-196; Ex. F at 35 (Wellman testifying that he was not sure whether

---

[6]According to Wellman, this letter was the first notice he received from the Company indicating any type of problem with his documentation. Def. Ex. D. at 192-193, 195, 219-220. Similarly, between March and June of 2006, Wellman had intermittently called off from work because of his arthritis. At no point, however, did the Company challenge his absences and/or indicate to him that there was a problem with his leave requests based on a lack of paperwork, and/or communicate that his requests for leave were being conditionally granted until he submitted FMLA paperwork. Id. at 192-195.

[7]The Company's Working Rules are set forth in the Employee Handbook. See Def. Ex. B. Wellman acknowledged receipt of the Employee Handbook and the Agreement on February 21, 2006. Def. Ex. H.

Townsend was asking him to bring in a separate doctor's note for <u>each</u> of his absences between March 9, 2006 and June 9, 2006).  Wellman spoke instead to Ken Chase who simply presented him with a second copy of the four FMLA documents.  Def. Ex. D at 196.

Wellman also wrote to Drew Sutphen, president of the Company.  Wellman's June 9, 2006 letter to Drew Sutphen, Pl. Ex. 3 at 1.  Wellman's letter provides in pertinent part:

>Drew:
>
>Earlier this morning, Ken Chase handed me a letter, signed by Keith Townsend, in which Mr. Townsend makes demands that are to be met by June 14.  Furthermore, Mr. Townsend threatens to terminate my employment if his demands are not met.
>
>Are you aware of Mr. Townsend's letter? Is this the company's official point of view on this matter of FMLA? I am enclosing a copy of Mr. Townsend's letter for your records.
>
>When I voiced my concerns to you in May about the treatment I was receiving from the company because of my requesting FMLA leave, you assured me you were talking with an attorney on the matter.  Mr. Townsend then assured the Union Steward, Tom Becker that he would excuse all days between May 10 and whenever he received word from your attorney.  Mr. Townsend agreed to write a letter stating this but has refused to keep his word to date.
>
>Please answer before June 14, as Mr. Townsend may take disciplinary action at that time, whether he knows what he is doing or not.  After all, we've seen him terminate the employment of others in error and I would prefer to avoid any hardship caused by Mr. Townsend's ignorance in this matter.

Id.  Drew Sutphen responded to Wellman by letter dated June 12, 2006, stating only that Wellman should follow the instructions set forth in Townsend's June 9 letter.  Def. Ex. F at 40-41.

The next day, June 13, 2006, Wellman sent emails to both Keith Townsend and Drew Sutphen.  Pl. Ex. 3 at 2-3.  His email to Mr. Townsend provides:

> Mr. Townsend,
> This is in reply to your threatening, error-filled letter of June 9, 2006.
>
> Since you agreed, on June 1, to excuse all absences from May 11, 2006 to whenever you receive [sic] advise from your attorney on this matter, I cannot understand your now threatening to suspend and/or discharge me from employment.  I have to tell you, this is not doing anything to boost your credibility with honest men.
>
> If you are acting on the long-awaited advice from your attorney, I would suggest you get a second opinion before you, once again, discharge an innocent employee.  I would be very surprised to learn your attorney advised you to take this action considering all the FMLA violations the company has already willfully committed.
>
> I'm assuming you are seeking some type of information about my requesting (and being denied) FMLA leave.  If possible, could you be more "clear and concise" with your request? I'm not exactly sure what you are demanding.  Also, your demand to have this information by June 14, 2006 is not only inconsiderate, illegal, and unrealistic - it is impossible.  Please re-evaluate your need of this specific deadline.
>
> If you have any questions, please contact me in writing, as I have no faith in your spoken word and you have no credibility with me.  Better yet, read the FMLA or have a competent attorney explain it to you.  Please do this before you (once again) make the mistake of discharging an innocent employee.

Wellman's June 13, 2006 e-mail to Townsend, Pl. Ex. 3 at 2.  Wellman testified that he sent

Townsend the e-mail because he still did not understand what additional documentation he was being asked to submit. Ex. D at 199; Ex. F at 35.

To Drew Sutphen, Wellman wrote:

> Mr. Sutphen,
>
> I received your urgent note in answer to my letter of June 9 and was sorry to see that you still appear to be unconcerned about the violations of my FMLA rights being committed by your company. Twice, in less than one month, I notified you that there were violations being committed. I had hoped you and I could work this problem out between us but apparently you would rather do it with lawyers. So be it. When this has run it's course and we have a final judgment - remember - you brought in the lawyers.
>
> Steve Wellman
>
> PS: It is impossible to meet the inconsiderate, illegal, and unrealistic demand for unclear information requested by Mr. Townsend on such short notice. Please reconsider your deadline.

Wellman's June 13, 2006 e-mail to Drew Sutphen, Pl. Ex. 3 at 3. The record does not contain evidence of a written response from either Keith Townsend or Drew Sutphen.

The same day that he sent the emails, Wellman had an appointment with Dr. Miller. Def. Ex. D at 199. Wellman took the second CHP form, which he had received from Ken Chase on June 9, with him to the appointment. Id. Dr. Miller was seeing other patients and so Wellman saw Dr. Flowers. Id. In the course of the appointment, Wellman gave the second CHP to Dr. Flowers and asked him to give the form to Dr. Miller. Id. Dr. Miller completed and returned the second CHP to Wellman at the end of July 2006.[8] Def. Ex. D at 200, 243.

---

[8]Wellman testified that he contacted the doctor's office "several times" to check on the status of the second CHP. Def. Ex. D at 243.

On June 15, 2006 Wellman met with Townsend.  Id. at 162-163.  Townsend informed

Wellman that he was being suspended subject to discharge for violating Company Working Rule

Four.  Id.  During the meeting, Wellman attempted to raise the question of what additional

documentation the Company required in support of his request for FMLA leave, but Townsend

refused to discuss the matter, saying "we're not talking about FMLA," and "this is about

insubordination."  Id. at 166, 169, 200.

Pursuant to the Agreement, an employee suspended subject to discharge is "given a

hearing by [Sutphen] with an officer of the Union and a shop steward present."  Def. Ex. A at 12.

If the suspension pending discharge is upheld at the hearing, "the employee will then be

discharged.  If the suspension pending discharge is not upheld ..., the employee shall be paid at

his regular rate for the period of the suspension and returned to his regular job."  Id.  Wellman's

hearing took place on July 11, 2006.  Def. Ex. F at 50.  At its conclusion, the Company informed

him that he was being discharged for violation of Working Rule Four, and specifically, for failing

to return completed FMLA paperwork despite the Company's requests that he do so – behavior

which, according to the Company, constituted insubordination.  Id. at 150-153; Def. Ex. C.

Wellman later testified that he did not have an opportunity to speak to the issue of FMLA

paperwork (and specifically, to explain that he had submitted a CHP to Chase and requested a

second CHP from his physician) at the hearing.  Def. Ex. D at 201.

The Union filed a grievance challenging the discharge and the grievance subsequently

proceeded to an arbitration hearing.  After the hearing, the arbitrator issued a written denial of the

grievance.  Arbitration Decision, Def. Ex. E at 20-24.  The arbitrator's decision was not appealed.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper  "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).  The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case.  Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).  In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52). The evidence, all facts, and any inferences that

may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## III.    ANALYSIS

Under the FMLA, qualifying employees are entitled to take up to twelve weeks of unpaid leave in a year when the leave is taken for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); Edgar v. JAC Products, Inc., 443 F.3d 501, 506 (6th Cir.2006). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves-(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The FMLA gives the Secretary of Labor notice and comment rule-making authority and directs the Secretary to issue regulations "necessary to carry out" the Act. 29 U.S.C. § 2654; Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002); see generally 29 C.F.R. §§ 825.100 et seq.[9]

_____

[9]The FMLA regulations were amended effective January 16, 2009. The parties agree, however, that this matter is governed not by the current version of the regulations, but by the version of the regulations in effect at the time of the actions at issue in this matter. Doc. 21, at 5

11

Two theories of recovery are available to employees under the FMLA.  <u>Wysong v. Dow</u>

<u>Chemical Co.</u>, 503 F.3d 441, 446 (6th Cir. 2007).  The interference theory arises from 29 U.S.C. §

2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain or

deny the exercise of or the attempt to exercise, any right provided under this subchapter." The

retaliation theory arises from 29 U.S.C. § 2615(a)(2), which provides that "[i]t shall be unlawful

for any employer to discharge or in any other manner discriminate against any individual for

opposing any practice made unlawful by this subchapter."  In the instant case, Wellman has

identified his single claim as a claim for interference under 29 U.S.C. § 2615(a)(1).  <u>See</u>

Wellman's Opposition to Summary Judgment, Doc. 21 at 5 ("Wellman's claim is clearly one of

interference.") and at 4 (acknowledging that to prevail on his claim, he (Wellman) must establish

the elements of the Sixth Circuit's test for FMLA interference claims.)  Wellman argues that

Sutphen interfered with his FMLA rights by "request[ing] medical certification in an unlawful

manner..., den[ying] receipt of properly submitted medical certification, and discharg[ing]

Wellman for non-compliance with [its] unlawful [certification] requests."  <u>Id</u>. at 7.

In order for Wellman to succeed on his interference claim, he has the burden of

establishing that at the time his claim arose: (1) he was an FMLA eligible employee;  (2) Sutphen

was an FMLA employer; (3) he was entitled to leave under the FMLA; (4) he gave Sutphen

notice of his intention to take leave; and (5) Sutphen denied him FMLA benefits to which he was

entitled or "'somehow used the leave against him and in an unlawful manner, as provided in

either the statute or regulations.'" <u>Wysong</u>, 503 F.3d at 446-447 (quoting <u>Bradley v. Mary Rutan</u>

<u>Hosp.</u>, 322 F.Supp.2d 926, 940 (S.D. Ohio 2004)(emphasis in original omitted)); <u>see</u> <u>also</u> <u>Cavin</u>

---

and Doc. 22 at 1.

v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003).  Each element must be proved by a preponderance of the evidence.  Wysong, 503 F.3d at 447.

Sutphen argues that Wellman is precluded from recovering under an interference theory due to his alleged failure to comply with FMLA medical certification requirements.  Additionally, Sutphen contends that Wellman's claim must fail because Wellman was terminated not for exercising FMLA rights but for the wholly separate and unrelated act of insubordination.  The court disagrees for the reasons set forth below.

### A.  *Wellman's Alleged Failure to Comply with Medical Certification Requirements*

Sutphen correctly asserts that an employee's right to FMLA leave is subject to the act's medical certification requirements.  Killian v. Yorozu Automotive. Tennessee. Inc., 454 F.3d 549, 554 (6th Cir. 2006).  Section 2613(a) of the act provides that an employer may require that a request for leave due to a serious health condition, such as Wellman's, be supported by certification issued by the employee's health care provider.  29 U.S.C.§ 2613(a).  The employer may also require the employee to "obtain subsequent recertifications on a reasonable basis."  29 U.S.C. § 2613(e); see also 29 C.F.R. § 825.308 (detailing the circumstances under which an employer may request subsequent recertifications of medical conditions).

The FMLA regulations clarify employer and employee rights and responsibilities with regard to medical certification and recertification.  When leave is foreseeable, an employee must provide his or her employer with medical certification at least thirty days prior to the scheduled absence. 29 C.F.R. § 825.305(b). "When this is not possible, the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request ), unless it is not practicable

13

under the particular circumstances to do so despite the employee's diligent, good faith efforts." <u>Id</u>.

Similarly, an employee "must provide ... requested recertification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.308(d). The regulations detail the consequences of an employee's failure to provide an appropriate medical certification. 29 C.F.R. § 825.311 provides the following:

> (a) In the case of foreseeable leave, an employer may delay the taking of FMLA leave to an employee who fails to provide timely certification after being requested by the employer to furnish such certification (i.e., within 15 calendar days, if practicable), until the required certification is provided.

> (b) When the need for leave is not foreseeable, or in the case of recertification, an employee must provide certification (or recertification) within the time frame requested by the employer (which must allow at least 15 days after the employer's request) .... If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave.

The employer must provide the employee with notice of the certification requirement and it must notify the employee of the consequences of non-compliance. 29 C.F.R.§ 825.305(a) & 29 C.F.R. § 825.305(d).

If the employer views a certification provided by an employee as "incomplete," the employer "shall advise" the employee of this belief and "provide the employee a reasonable opportunity to cure any ... deficiency." 29 C.F.R.§ 825.305(d). Additionally, an employer who "has reason to doubt the validity of a medical certification" may, at the employer's expense,

require the employee to obtain a second and/or third medical opinion. 29 U.S.C.§ 2613(c); 29

C.F.R.§ 825.307(a)(2).

In this case, Sutphen required Wellman to submit a doctor's certification of his arthritis.

Def. Ex. A; Pl. Ex. 2. Sutphen argues that Wellman did not satisfy this certification requirement,

and as a result, he is precluded from stating a claim for FMLA interference.

Whether Sutphen received Wellman's certification is a material fact question. See

Brumbalough v. Camelot Care Centers, Inc, 427 F.3d 996, 1004 (6th Cir. 2005)(finding a

"genuine issue as to the material fact of whether [defendant-employer] received [plaintiff-

employee's] fitness-for-duty-certification" and therefore reversing grant of summary judgment to

defendant-employer); Neppl v. Signature Flight Support Corp., 234 F.Supp.2d 1016, 1027

(D.Minn. 2002)(observing that "[t]he defendant[-former employer]'s receipt or non-receipt of the

certification is a material fact question"). And, the court finds that there is evidence in the record

on which a jury could reasonably find for Wellman on this material question, i.e., that Wellman

did return the required certification to Sutphen. Wellman's physician, Dr. Miller, attested that he

received the CHP form from Wellman in March 2006, that he completed the form on March 16,

2006, and that he returned the form to Wellman on March 20, 2006. Pl. Ex. 4. A copy of the

CHP, signed by Dr. Miller and dated March 16, 2006, is part of the record. Def. Ex. J; Cf. Myers

v. Dolgencorp, Inc., No. 04-4137-JAR, 2006 WL 408242, at *7-8 (D. Kan. Feb. 15, 2006)

(granting summary judgment to employer where employee's assertion that she mailed the FMLA

certification to the employer was wholly unsupported by the evidence; among other things,

employee did not produce a copy of the certification she claimed she mailed to employer, and

plaintiff's treating physician, who plaintiff claimed helped her fill out the certification, testified

that he did not complete the certification and could not even recall plaintiff ever talking to him about FMLA leave). The record also contains Wellman's testimony that on March 22, 2006 (his first day back at work after his March 20 appointment with Dr. Miller) he returned the CHP completed by Dr. Miller to Ken Chase, his supervisor who initially gave him the blank CHP. Def. Ex. D at 190.

Sutphen maintains, however, that it is entitled to summary judgment <u>even if</u> Wellman submitted the CHP on March 22 because Wellman failed to cure an alleged defect or "incompleteness" in that certification. <u>See</u> <u>e.g.</u>, Doc. 22 at 5, 7. Sutphen refers the court to 29 C.F.R.§ 825.305(d), the FMLA regulation addressing incomplete medical certification. As stated above, that regulation requires an employer who views a certification as "incomplete" to (1) advise the employee of this belief and (2) "provide the employee a reasonable opportunity to cure any ... deficiency." 29 C.F.R.§ 825.305(d).

Sutphen argues that the certification Wellman claims he submitted on March 22 "must be deemed <u>incomplete</u> [within the meaning of subsection 825.305(d)] as Sutphen had no relevant information regarding Wellman's condition or need for leave in its possession." Doc. 22 at 7(emphasis added.) In other words, Sutphen contends that Wellman's certification was "incomplete" because it did not exist in the Company's file.[10] Faced with this alleged

---

[10]The FMLA provides that a certification is sufficient if it states (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health-care provider regarding the condition; and (4) a statement that the employee is unable to perform the functions of her position. 29 U.S.C. § 2613(b). At no point does Sutphen challenge the <u>content</u> of the CHP Wellman claims he turned in (a copy of which is attached to Sutphen's Motion as Defendant's Exhibit J) as being "incomplete" or insufficient on one of the above-stated grounds. <u>Cf.</u> <u>Spencer v. Marygrove College</u>, No. 07-CV-11135, 2008 WL 4056319, at *8-9 (E.D. Mich. Aug. 26, 2008)(defendant-employer argued that plaintiff-employee was precluded from recovering on an

"incomplete" certification, Sutphen asserts that it was required under 29 C.F.R.§ 825.305(d) to notify Wellman of the "incompleteness" and to provide him with a reasonable opportunity to cure it. The Company argues that it did just that with Keith Townsend's June 9, 2006 letter, and because Wellman did not cure in the manner requested by the letter (i.e., by submitting certification in 5 days), Wellman cannot state a claim for FMLA interference.[11] Sutphen's argument is not well-taken.

First, the court does not agree with Sutphen's contention that a certification that does not exist in the employer's FMLA file is an "incomplete" certification within the meaning of subsection 825.305(d). Notably, Sutphen cites no authority in support of this interpretation of "incomplete," and in fact, this court's research indicates that courts both inside and outside of the Sixth Circuit have declined to equate the term, as it is used in subsection 825.305(d), with non-existent. See e.g., Urban v. Dolgencorp of Texas, Inc., 393 F.3d 572, 576-77 (5th Cir. 2004); Heard v. SBC Ameritech Corp., No. 05-CV-71712-DT, 2005 WL 1802086, *7 (E.D. Mich. July 27, 2005); Baldwin-Love v. Elec. Data Systems Corp., 307 F.Supp.2d 1222, 1234 (M.D.Ala. 2004); Neppl, 234 F.Supp.2d at 1027; see also Sorrell v. Rinker Materials Corp. , 395 F.3d 332, 338 (6th Cir. 2005)(noting that "there is relatively little case law interpreting the term 'incomplete' as it is used in [the regulations]," but some courts have equated the term with "inadequate.")(internal citations omitted).

FMLA interference theory because plaintiff had submitted incomplete certification – a certification that allegedly did not satisfy 29 U.S.C. § 2613(b)(2) – and had failed to cure the certificate's alleged "incompleteness").

[11]Wellman does not challenge the Company's right to make a "second request for certification," but argues that pursuant to 29 C.F.R. §§ 825.305(b) and 825.308(d), the Company was required to provide Wellman a minimum of 15 (rather than 5) calendar days to comply with the request. Doc. 21 at 7.

The court in <u>Heard v. SBC Ameritech Corp.</u> addressed the question in the course of responding to plaintiff-employee's argument that her former employer had been obligated under subsection 825.305(b) to notify her that it had not timely received her certification and to provide her with an opportunity to cure this "incompleteness." <u>Heard</u>, 2005 WL 1802086, at *2. The employee alleged that she had timely submitted the certification form to her family physician's office, but that the office misplaced the form and therefore, failed to fax it to the employer as she had requested. <u>Id</u>. The district court, relying on the plain language of the regulation, policy considerations, and an analogous decision by the Fifth Circuit declined to accept plaintiff's argument and interpretation of "incomplete." <u>Id</u>. at *5-7.

The court observed:

> the plain language of the regulation itself applies when an employer "finds a certification incomplete." Webster's Collegiate Dictionary defines "incomplete" to mean "not complete," "unfinished," or "lacking a part." If a certification is not timely provided by an employee requesting FMLA leave, there is no certification for the employer to find incomplete, inadequate, unfinished, or lacking a part. The insufficiency of the certification may be discovered or revealed only after the employer receives and reviews the medical certification that it legally is entitled to request under § 2613(a).

<u>Id</u>. at *7 (internal citations omitted).

With regard to policy considerations, the court noted, as the Fifth Circuit Court of Appeals had, that Congress's stated purpose in passing the FMLA was to "'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons' in a way 'that accommodates the legitimate interests of employers.'" <u>Id</u>. (quoting <u>Urban v. Dolgencorp of Texas, Inc.</u>, 393 F.3d 572, 576 (5th Cir. 2004)). The court reasoned that if it adopted plaintiff's interpretation of "incomplete" and application of subsection

825.305(d):

> an employer could never set a real deadline for the return of a
> medical certification. In effect, whenever an employee failed to
> return a medical certification within the appropriate time period, the
> employer would be required to notify the employee of that fact and
> provide the employee with an opportunity to cure the deficiency by
> allowing the employee to submit the certification within a new,
> extended deadline–a scenario that could, in theory, repeat itself <u>ad
> infinitum</u>.

<u>Id</u>. (quoting <u>Urban</u>, 393 F.3d at 577.) The end result, according to the court, would be to "create an imbalance where the 'legitimate interests of employers' no longer receive the protections that Congress presumably intended to provide when it enacted the FMLA." <u>Id</u>. (quoting <u>Urban</u>, 393 F.3d at 577.)

This court finds the plan language analysis and policy considerations outlined in <u>Heard</u> and <u>Urban</u> persuasive, and therefore, declines Sutphen's invitation to equate "incomplete" as it is used in 29 C.F.R. § 825.305(d) with non-existent. The court does not find Wellman's certification "incomplete" simply because it purportedly did not exist in Sutphen's FMLA file.

Moreover, even if the court found Wellman's certification to be "incomplete," it could not say, based on the record before it and as a matter of law, that Sutphen satisfied its obligation to provide Wellman with a "reasonable opportunity to cure [the incompleteness]." 29 C.F.R. § 825.305(d); <u>see</u> <u>also</u> <u>Austin v. Jostens, Inc</u>., No. 07-2380-JAR, 2008 WL 4642277, at *9 (D.Kan. Oct. 16, 2008) (whether the employer provided its employee a reasonable opportunity to cure a deficiency in an incomplete FMLA certification is material fact question); <u>Nelson v. General Motors Corp</u>., No.1:02-CV-1705-DFH-VSS, 2006 WL 839483, *1 (S.D. Ind. March 28, 2006))(same). More than two months after he returned a completed CHP to his supervisor,

Wellman received a letter from the Company demanding that he provide "completed FMLA forms" and "medical verification" of all his past absences within 5 days. Def. Ex. K. Wellman timely requested that the Company clarify exactly what documentation it required and extend the submission deadline, but his requests went largely unanswered. Pl. Ex. 3. The court concludes that a reasonable jury could find, based on this record, that Sutphen did not provide Wellman with a "reasonable opportunity to cure." Cf. Novak v. MetroHealth Med. Ctr., 503 F.3d 572, 579 (6th Cir. 2007)(holding that employer provided employee a reasonable opportunity to cure deficiency where it held a meeting with the employee so that it could explain the deficiency to the employee and allowed employee an additional week to obtain other certification); Smith v. CallTech Communications, LLC, No. 2:07-cv-144, 2009 WL 16515309, at *8 (S.D. Ohio June 10, 2009)(holding that employer did not provide employee with a reasonable opportunity to cure where employer gave employee only three days to obtain additional medical documentation despite employee's protest that she would not be able to schedule a doctor's appointment within three days); Brady v. Potter, 476 F.Supp.2d 745, 758 (N.D. Ohio 2007) (holding that employee could not state a claim for FMLA interference because she failed to cure deficiency in her certification despite being provide with a reasonable period of time–15 days–to cure).[12]

---

[12]Sutphen suggests that Townsend's June 9 request was lawful even if it is viewed as a request for certification or recertification rather than a request to cure an incomplete certification. As explained above, employers are required to give their employees a minimum of 15 days to submit requested certification or recertification. 29 C.F.R. § 825.305(b), 29 C.F.R.§ 825.308(d). Here, however, Townsend informed Wellman that he had only 5 days to submit his certification and then on the sixth day took adverse employment action against Wellman (i.e., suspending him subject to discharge) despite Wellman's requests that the Company clarify exactly what documentation it was asking him to submit and his requests for an extension of the submission deadline. Cf. Killian, 454 F.3d at 555 (holding that employer violated the FMLA when it terminated an employee only six days after it requested additional certification from the employee).

For the above reasons, the Court declines to grant summary judgment to Sutphen on its first contention.

### B.       *Wellman's Discharge for Alleged Insubordination.*

The Sixth Circuit has acknowledged that "the right to non-interference with medical leave is not absolute."  Arban v. West Publishing Corp., 345 F.3d 390, 401 (6th Cir. 2003).

---

Sutphen argues that the court should focus on the time that passed between Townsend's request and Wellman's termination (i.e., several weeks) as opposed to the time that passed between Townsend's request and Wellman's suspension (i.e., six days).  Sutphen cites Rager v. Dade Behring, Inc., 210 F.3d 776 (7th Cir. 2000) in support of its position.  Rager, however, is inapposite.  The employer in that case informed the employee that she had 15 days to submit certification, and mailed plaintiff a certification form six days later.  Id. at 778.  The issue in the case was whether the 15-day clock began to run when plaintiff learned of the certification requirement or, rather, when she received the certification form.  Id.  The court concluded it was the former.  Id.  Rager therefore dealt not with the question of when the "clock" stops, but when the clock begins to run.

Moreover, in this case (unlike Rager) Wellman alleges that he did submit timely medical certification to his supervisor.  Def. Ex. D at 190.  More than two months after he alleges he did so, Wellman was informed, by letter, that he had only 5 days to submit "medical verification of [his] past absences pertaining to [his] request for FMLA."  Def. Ex. K.  Before the 5 days expired, Wellman asked the Company to explain exactly what type of verification or documentation it required (Wellman was not sure whether the Company required a separate doctor's note for each of his absences between March 9, 2006 and June 9, 2006, see Def. Ex. F at 35) and to extend the submission deadline.  Pl. Ex. 3.  Wellman's requests went largely unanswered, and he was suspended subject to discharge six days later (in contrast to the plaintiff in Rager who was terminated more than 15 days after the certification request was made).  Wellman tried to again raise the documentation question with Townsend during their meeting on the sixth day, but was told by Townsend that he would not address the question.  Similarly, Wellman claims that he did not have an opportunity to speak to the documentation issue during the hearing that preceded his termination.  Viewing the facts in the light most favorable to Wellman (as the court must do at this stage), the court concludes that it was reasonable for Wellman not to submit a certification between the day he was suspended subject to discharge and the day he was discharged.

Accordingly, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Id.; Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (6th Cir. 2006) ("interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.")

Here, Sutphen argues that Wellman cannot state a claim for FMLA interference because Sutphen dismissed Wellman for "a legitimate reason unrelated to the exercise of FMLA rights" – Wellman's alleged insubordination. While insubordination can serve as a legitimate reason unrelated to the exercise of FMLA rights for dismissing an employee, see e.g., Burnett v. LFW, Inc., 472 F.3d 471, 482 (7th Cir. 2006), this court cannot say based on the record before it and as a matter of law that Wellman's alleged insubordination was unrelated to his exercise of FMLA rights and/or that Welllman's dismissal would have occurred even absent Wellman's exercise of FMLA rights.

The present factual scenario is different from "the normal situation where the alleged insubordination was entirely separate from the request for FMLA leave." Burnett, 472 F.3d at 482. Wellman's alleged insubordinate act – failure to submit medical certification supporting his request for FMLA – is inextricably linked to and a key component of his request for FMLA leave. Cf. id. (where employee's alleged insubordinate act – demanding to leave work because he felt ill – was, at a minimum, a key component of employee's request for leave, a jury question remained as to whether employer would have terminated employee absent employee's exercise of his FMLA rights).

It is on this basis, among others, that Wellman's case is distinguishable from Crofoot v. MidMichigan Medical Center-Midland, No. 05-10032, 2007 WL 1017336 (E.D. Mich. March 30, 2007), a case relied upon by Sutphen. The insubordination at issue in that case – Crofoot's use of profanity when discussing a subordinate and decision to disobey a directive from her supervisor not to confront the employee who reported the fact that plaintiff made the profane comments to the supervisor – was entirely separate from Crofoot's request for FMLA leave. Id. at *2, 15. Moreover, unlike Wellman, Crofoot not only admitted engaging in the insubordinate behavior but also testified that she frequently used profanity in her workplace and that she had longstanding problems maintaining professional relationships with co-workers. Id. at *1. In fact, other employees had informed defendant that they feared the plaintiff and would consider quitting if something was not done. Id. at *2. The court concluded that "the evidence of [defendant's] legitimate reasons for firing [Crofoot] – that is, her insubordination and use of obscene language – is so one sided that no reasonable fact finder could conclude that the plaintiff would not have been terminated but for her exercise of FMLA rights." Id. at *7. Because "the overwhelming evidence in th[e] case suggest[ed] that the plaintiff was headed for termination, and her exercise of FMLA rights had nothing to do with it" the court granted defendant summary judgment on plaintiff's FMLA interference claim. Id. at *8. The court explained that although there was some ambiguity regarding when the decision to discharge plaintiff was made (i.e., before or after Crofoot requested FMLA leave), it was "clear that it was precipitated entirely by the plaintiff's hostile confrontation of [her co-worker] in direct violation of [her supervisor's] order and the effect of plaintiff's prior behavior on her coworkers." Id.

In contrast, it is not clear in the instant is case that the decision to terminate Wellman was

"precipitated entirely by [insubordinate behavior that was separate from a request for FMLA leave]." Indeed, the alleged insubordination in this case – Wellman's alleged failure to submit a medical certification in support of his request for medical leave – is a key component of his leave request. Without Wellman's request for FMLA leave, there would have been no request for medical certification and no alleged failure to comply with the request. And as explained above, Wellman has presented evidence upon which a reasonable fact finder could conclude that he did in fact comply by submitting a CHP to his supervisor on March 22. Moreover, there is no history of misconduct in this case, unlike in Crofoot, nor is there any indication that Wellman, like Crofoot, was "headed for termination" even absent his request for FMLA leave.[13]

The court therefore holds that a genuine issue of material fact exists as to whether Wellman's dismissal would have occurred regardless of his exercise of FMLA rights and denies Sutphen summary judgment on its second contention.

---

[13]Sutphen also refers the court to <u>Denny v. Union Pacific R. Co.</u>, No. 04-35490, 173 Fed.Appx. 549 (9th Cir. Mar. 9, 2006). <u>Denny</u>, however, is inapposite because it addressed a different question than the question presented in this case. The question in <u>Denny</u> was whether a factual finding made by the district court after a four-day trial – i.e., that plaintiff was terminated because of a heated exchange with his supervisor and not because he requested FMLA leave – was clearly erroneous. <u>Id</u>. at 550. In an unpublished decision, the Ninth Circuit answered this question in the negative after concluding that the lower court's finding was one of two permissible views of the evidence. <u>Id</u>. (citing <u>Anderson v. City of Bessember City</u>, 470 U.S. 564, 574 (1985)).

**IV.     CONCLUSION**

Based on the foregoing analysis, Sutphen's motion for summary judgment (doc. no. 20) is

denied.

It is so ORDERED.

<u>s/James L. Graham</u>
James L. Graham
UNITED STATES DISTRICT JUDGE